# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.     07-80099-CR-MARRA/HOPKINS

**UNITED STATES OF AMERICA**

vs.

**MARION YARBROUGH,**
a/k/a "BlockBurna1,"

       **Defendant.**

                                    /

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT [DE 54]

The United States, by and through the undersigned Assistant United States Attorney, hereby files this response to defendant Marion Yarbrough's objections to the Presentence Investigation Report ("PSI") and asks the Court to overrule the objections. The defendant states that the victim in this case, "A," did not suffer serious bodily injury; that there was no use of threats or violence to force "A" to engage in sexual activity; and that he is not a Career Offender.[1]  At sentencing the United States will present evidence regarding the mental and physical injuries suffered by "A" and how the defendant used both force and threats to induce "A" to engage in sexual activity.

---

[1] Defendant Yarbrough states that he will revisit his objection to the Career Offender status after reviewing additional documents received from the Probation Officer.  The documentation provided by the Probation Officer is sufficient proof that the defendant has convictions for two violent felonies and, accordingly, that the defendant is a Career Offender.  If Yarbrough should renew his objection after reviewing the documentation, the United States will provide a more thorough response.

## **STATEMENT OF FACTS**

The indictment in this matter charges that the defendant knowingly and willfully used a facility of interstate commerce to entice a fifteen-year-old girl, "A," to engage in unlawful sexual activity; that the defendant knowingly and willfully transported "A" in interstate commerce intending that she engage in unlawful sexual activity; and that the defendant knowingly and willfully persuaded and induced "A" to travel in interstate commerce to engage in unlawful sexual activity; in violation of Title 18, United States Code, Sections 2422(b), 2423(a), and 2422(a).

Beginning on or around April 12, 2007, the defendant, using the screen name "Blockburna1," began communicating with "A," a fifteen-year-old girl residing in Palm Beach County, Florida in the Southern District of Florida. The defendant communicated with "A" orally and in writing via their cellular phones and the internet. On several occasions, "A" told the defendant that she was fifteen years' old. The defendant told "A" that he was twenty-one years' old, although he actually was thirty-four years' old. From the beginning of their communications, the defendant told "A" that he wanted to engage in sexual activity with her, telling "A" that he would "take care of" her because she was a virgin and that he wanted to have a child with her. The defendant repeatedly asked "A" to visit him in Kentucky for a weekend or for however long she liked. The defendant finally convinced "A" to leave Florida and to travel to Kentucky to see him.

The defendant arranged to have a friend named Cicero Hughes purchase a Greyhound bus ticket for "A" to travel from West Palm Beach, Florida to Bowling Green, Kentucky.

On April 23, 2007, the defendant provided the Greyhound bus reference number to "A" so that she could pick up the bus ticket from the Greyhound station in West Palm Beach. Prior to departing, "A" reminded the defendant that she was only fifteen years' old, and asked if Greyhound would allow her to travel without any identification. The defendant told "A" that he had checked with Greyhound and she did not need to show any identification. On April 24, 2007, "A" boarded a Greyhound bus in West Palm Beach, Florida, en route to Bowling Green, Kentucky. At a stop during the trip, "A" telephoned the defendant, who told her to get off the bus in Nashville, Tennessee, where he would pick her up. "A" arrived in Nashville on April 25, 2007. The defendant was at the Nashville Greyhound station when "A" arrived, and he drove her to Bowling Green, Kentucky.

Over the next fifteen days, the defendant engaged in sexual intercourse and oral sex with "A" on several occasions. "A" reported that she physically resisted having sex with the defendant, but he eventually overpowered her, telling her that it would be worse if she continued to resist. After the first sexual encounter, "A" stated that they engaged in sexual intercourse twice per day. The defendant hit "A" on several occasions to make her submit to the sexual intercourse. Yarbrough also repeatedly bragged about belonging to a gang and having suffered a gunshot wound, to make "A" believe that Yarbrough had people who would hurt her if she didn't obey him. The sexual acts that were committed, including oral, anal, and vaginal sex, constituted sexual activity with "A" for which the defendant could be charged with a criminal offense, that is, violations of the following sections of the Kentucky Penal Code: Section 510.060 (Rape in the Third Degree); Section 510.090 (Sodomy in the

Third Degree); and Section 530.064 (Unlawful Transaction with a Minor in the First Degree).

After "A" ran away from home, her mother contacted the Federal Bureau of Investigation to assist in finding "A." The FBI, working with the Palm Beach Sheriff's Office and the Kentucky State Police, were able to identify and locate the defendant from records recovered from "A's" computer and cellular telephone, and from other telephone records. On May 10, 2007, FBI agents and Kentucky State Police detectives went to the home of the defendant's sister where they found "A" and arrested the defendant.

At the time of the defendant's arrest, "A" underwent a physical examination by a medical doctor at the Barren River Area Child Advocacy Center in Bowling Green, Kentucky. Contrary to the statement in defendant's objections that "the Medical Record is not only devoid of such conclusion [regarding serious bodily injury], but contradicts it," (Obj. at 1,) Doctor Todd Douglas's assessment states:

> 1. 15 year old victim of multiple sexual assaults by a 35 year old perpetrator. Significant findings include petechiae in the posterior fourchette and the transection of the hymen at 3:00 and 7:30. The petechiasis a likely result of intercourse within the last couple of days, the transection of the hymen very likely occurred a few weeks ago during the initial intercourse. 2. Gastritis or Dyspepsia. 3. Headache. 4. Insomnia with some anxiety.

That document, along with the testimony of Dr. Douglas, will be presented at the sentencing.

"A" returned to West Palm Beach in the care of her mother. Some days after returning from Kentucky, "A" was examined for possible sexually transmitted diseases, including HIV. Even after this passage of time, "A" was still suffering from vaginal

4

swelling.  In addition to these physical injuries, there was evidence of the psychological trauma that "A" suffered due to Yarbrough's criminal actions.  For example, "A" began tearing her skin off, resulting in a visit to the emergency room where "A" received steroids to help heal the skin and anti-anxiety medication.  Even now, more than one year after Yarbrough's sexual assaults, "A" refuses to sleep alone in her bedroom, insisting that she sleep in bed with her mother, in her mother's bedroom.  "A" has asked for and received several counseling sessions arranged through the FBI's victim coordinator, but lacks funds to pay for additional sessions.

Most dramatically, "A" was scheduled to come to the FBI office yesterday (July 17, 2008) to meet with the undersigned to discuss in greater detail the violence that she suffered and her mental and physical health.  As the date approached, "A" became more and more agitated, and then ran away from home.  The police were able to locate "A," and she made several threats to kill herself, resulting in "A" being "Baker-acted" yesterday.  She currently is committed to a hospital for a mental evaluation.

## ARGUMENT

### A.   The Court Should Overrule Yarbrough's Objection to a Two-Level Enhancement for "Serious Bodily Injury."

Yarbrough objects to the imposition of a two-level enhancement under U.S.S.G. § 2A3.1(b)(4), which applies where "the victim sustained serious bodily injury."  Yarbrough argues that the victim suffered only "'normal' tearing associated with sexual conduct between two willing participants."  (Obj. at 1.)  Yarbrough points to Application Note 1,

which states that, "for purposes of this guideline, 'serious bodily injury' means conduct other than criminal sexual abuse, which already is taken into account in the base offense level[.]" It is true that, pursuant to that Application Note, if "A" had suffered only "'normal' tearing associated with sexual conduct between two willing participants" the enhancement probably would not apply. But that is not this case.

In this case, "A" suffered both serious physical and mental injuries that exceed those that would occur naturally from a single act of sexual intercourse. And it is for those injuries that the Court should apply the enhancement. In *United States v. Randolph Valentino Kills in Water*, 293 F.3d 432 (8th Cir. 2002), the Eighth Circuit addressed when the "serious bodily injury" enhancement applies in a sex abuse case. It noted that "the enhancement may be applied if the district court specifically finds that the victim suffered long lasting bodily or mental impairment." *Id.* at 435. In *Randolph Valentino*, the district court had relied upon:

> the victim's bite marks, her physical trauma to the vaginal and perianal areas, her continued psychological problems such as recurring nightmares and attempted suicide, and her ongoing need for psychological counseling, as the basis for concluding that the victim suffered serious bodily injury.

*Id.* at 436. The defense in the *Rudolph Valentino* case argued that "the enhancement should not apply because the victim only received injuries that are 'normal' for rape victims, and therefore do not constitute serious bodily injury in excess of the aggravated sexual abuse charge." The Eighth Circuit disagreed, finding that the injuries justified application of the enhancement. *Id.*

The following year, the Eighth Circuit addressed the same issue and explained the

6

Application Note that Yarbrough relies upon so heavily:

> When the crime is sexual abuse, however, "'serious bodily injury' means conduct other than criminal sexual abuse, which already is taken into account in the base offense level." USSG § 2A3.1, comment. (n.1). This does not mean that any injuries resulting from an episode of criminal sexual abuse are excluded – only that the act of sexual abuse is insufficient by itself to support a § 2A3.1(b)(4)(B) enhancement.

*United States v. Long Turkey*, 342 F.3d 856, 858 (8th Cir. 2003) (citing *United States v. Guy*, 282 F.3d 991, 996-97 (8th Cir. 2002)).

The types of findings of fact that support the application of the "serious bodily injury" enhancement are laid out in detail in *United States v. Amerson*, 864 F. Supp. 458 (M.D. Pa. 1994). In *Amerson*, the defendant sexually assaulted a ten-year-old girl, penetrating her mouth, vagina, and anus with his penis. The case does not state how long the assault lasted, but from the description it probably did not last longer than an hour. Here, of course, Yarbrough repeatedly raped "A" over a series of days. In *Amerson*, the "[m]edical examination of the little girl showed that she suffered from vaginal bleeding, rope burns upon her wrist, and abrasions on her back and elbows." *Id.* at 459. In *Amerson*, the defense objected to the application of the "serious bodily injury" enhancement, arguing that the types of injuries suffered were typical for the crime of conviction – rape of a child. The district court disagreed. Although the district court made the finding of fact that "[d]uring the course of the sexual assault the victim was not beaten.," *id.* at 461, the court still imposed the enhancement finding that the victim "suffered lacerations of the outer areas of the vagina and of the rectum," that there was a "laceration on the hymenal tissue," and swelling of the

vaginal area. *Id.* at 462. The court noted that the lacerations did not "require[] suturing and no medications were prescribed by the physician for any pain or swelling," and that "at the hospital the victim was reported as being calm and cooperative." Similarly, the "medical evidence indicated that there was no permanent trauma to the vaginal area of the victim such as scarring." *Id.* at 463. Nonetheless, the court applied the enhancement, noting the lacerations and swelling, the fact that the physician could not complete his exam due to pain to the victim, the fact that the victim had to undergo several tests for sexually transmitted diseases and follow up medical care with additional testing for pregnancy and communicable diseases, and the victim's soreness, pain, and difficulty in urination and defecation. *Id.* at 462.

There are several similarities with "A's" injuries. She also was repeatedly penetrated by the defendant over a period of longer than two weeks, estimating that they engaged in sexual activity twice per day. She was struck by the defendant, and suffered tearing of the hymen and bruising of the vaginal area, resulting in swelling that lasted even after she returned to Florida. Like the victim in *Amerson*, a full pelvic exam could not be conducted because of the pain that "A" was suffering. "A" also had to undergo several rounds of medical testing for pregnancy and sexually transmitted diseases, and suffered vaginal bleeding and pain during urination following the sexual assaults. Furthermore, while in *Amerson*, the effect on the victim's mental health was minimized (the case mentions only that the "victim has received counseling in connection with the assault"), here, the trauma to "A's" mental health far exceeds that to her body. *See also United States v. Dumpson*, 70

8

F.3d 1268, 1995 WL 696737 *4 (5th Cir. Oct. 19, 1995) (Defendant induced, without force, three females aged sixteen, thirteen, and fifteen, to enter his car and drove them to a remote tract of land, where he forced them to engage in sexual acts. Court applied "serious bodily injury enhancement" based solely upon "bleeding and lacerations in the vaginal area" and "psychological pain following the sexual assault, including, in one case, an attempted suicide."); *United States v. Scott*, 985 F.2d 576, 1993 WL 12495 *6 (9th Cir. Jan. 22, 1993) ("The Guidelines clearly provide that psychological injuries alone qualify as a type of bodily injury under § 2A3.1(b)(4)(C).").

At sentencing, the United States intends to introduce testimony and/or documentation from the medical and mental health practitioners who have treated "A" as well as the testimony of "A" and her mother regarding the physical and mental harm that "A" has suffered as a result of Yarbrough's sexual assaults. Based upon that evidence, the United States will ask the Court to overrule Yarbrough's objection to the application of the "serious bodily injury" enhancement.

### B. The Court Should Overrule Yarbrough's Objection to a Four-Level Enhancement for Using Force or Threats to Accomplish the Sexual Assault.

Yarbrough objects to the application of a four-level enhancement under U.S.S.G. § 2A3.1(b)(1), asserting that his sexual activity with "A" "was consensual and did not result in 'serious bodily injury.'" (Obj. at 3.) First, it must be noted that the application of this enhancement is completely independent of the application of the "serious bodily injury" enhancement, so this enhancement can apply even if the Court were to find that "A" did not

suffer any injury. *See United States v. Volpe*, 224 F.3d 72, 78 (2d Cir. 2000) ("The use-of-force adjustment punishes forcible compulsion of sexual acts, while the degree-of-injury adjustment punishes the assailant for the injuries to the victim that result from the assault. These different purposes are served even if some of the victim's injuries derive from the force and restraint used to compel his submission, rather than from the sexual act itself.").

How the enhancement should be applied is described by the Second Circuit in *Volpe*:

> U.S.S.G. § 2A3.1(b)(1) requires a four-level increase in offense level if the sexual abuse "was committed by the means set forth in 18 U.S.C. § 2241(a) or (b)." Section 2241(a) punishes those who knowingly cause someone else to engage in a sexual act:
>
>> (1) by using force against that other person; or
>>
>> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping.
>
> 18 U.S.C. § 2241(a). Section 2241(b) punishes those who engage in a sexual act with someone else by knowingly:
>
>> (1) render[ing that] person unconscious . . .;or
>>
>> (2) administ[ering] to [that] person . . . a drug, intoxicant, or other similar substance [that] substantially impairs the ability of that other person to appraise or control conduct.
>
> *Id.* § 2241(b). As the text of these statutory provisions makes clear, they penalize conduct intended to overcome another person's lack of consent to a sexual act, whether achieved through physical force, threats of force, or other means that render the other person unconscious or otherwise unable to fend off the assault. *See United States v. Weekley*, 130 F.3d 747, 754 (6th Cir. 1997) ("A force sufficient to sustain a conviction under 18 U.S.C. § 2241(a) includes 'the use of such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim.'" (quoting *United States v. Fire Thunder*, 908 F.2d

>> 272, 274 (8th Cir. 1990)).  Therefore, § 2A3.1(b)(1) "punishes the actual use of force [or other means listed in § 2241(a) and (b)] used to overbear the will of another in perpetrating aggravated sexual abuse." *United States v. Reyes Pena*, 216 F.3d 1204, 1210 (10th Cir. 2000).

*Volpe* at 77 (brackets in original).

Thus, the question that the Court must address is whether, during *any* of the sexual assaults that Yarbrough committed, he used force or threats to cause "A" to engage in sexual activity.  It appears that the Eleventh Circuit has never provided a definition of "force" for purposes of this Guideline, but the Tenth Circuit has:

> there is no statutory definition of "force" provided by the Guidelines. . . . We hold that the § 2A3.1(b)(1) enhancement is justified by the factual finding that the perpetrator used such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim. . . . That is, a force enhancement is appropriate when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." Moreover, force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power, such as that between an adult and a child.

*United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000) (extensive internal quotations and citations omitted).  A few months ago, the Tenth Circuit wrote: "all that is required is that the defendant restrain the victim such that the victim could not escape the sexual contact."  *United States v. Chee*, 514 F.3d 1106, 1116 (10th Cir. 2008).

Applying those standards to the facts of this case show that the enhancement is warranted.  "A" will testify that the defendant hit her and forced her to engage in sex.  The Court can assess "A's" appearance – even now, more than fifteen months after the assaults, "A" is a petite young girl – and compare it with that of the defendant.  The Court can

11

consider that she was hundreds of miles from home, in a city where she knew no one, without her cell phone or any money to escape from the defendant. Based upon those facts, and the testimony that will be provided at sentencing, the United States asks the Court to overrule the objection.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court overrule the defendant's Objections to the Presentence Investigation Report.

>Respectfully submitted,
>R. ALEXANDER ACOSTA
>UNITED STATES ATTORNEY
>
>By:   /s/*A. Marie Villafaña*
>A. MARIE VILLAFAÑA
>Assistant United States Attorney
>Florida Bar No. 0018255
>500 South Australian Avenue, Suite 400
>West Palm Beach, FL 33401
>Telephone: 561 820-8711
>Facsimile: 561 820-8777

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  According to the Court's website, counsel for all parties are able to receive notice via the CM/ECF system.

          /s/*A. Marie Villafaña*
          A. MARIE VILLAFAÑA
          Assistant United States Attorney

## SERVICE LIST

**United States v. Marion Yarbrough
Case No. 07-80099-Cr-Marra/Hopkins
United States District Court, Southern District of Florida**

A. Marie Villafaña
Assistant U.S. Attorney
ann.marie.c.villafana@usdoj.gov
U.S. Attorney's Office
500 S. Australian Ave, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 820-8777
Attorney for United States
[Service via CM/ECF]

Michael Metz, Esq.
metzlaw1@aol.com
Second Floor
1217 S. Flagler Drive
West Palm Beach, FL 33401
Telephone: (954) 761-2300
Facsimile:
Attorney for Defendant Marion Yarbrough
[Service via CM/ECF]