Page 1

```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2

 3   UNITED STATES OF AMERICA,)   Case No.
                             )   07-80099-CR-MARRA
 4           Plaintiff,      )
                             )
 5       -v-                 )
                             )
 6   MARION YARBROUGH,       )
                             )
 7           Defendant.      )   West Palm Beach, Florida
                             )   April 4, 2008
 8   _____)

 9

10          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

11         BEFORE THE HONORABLE KENNETH A. MARRA

12                    U.S. DISTRICT JUDGE

13

14   Appearances:

15   FOR THE GOVERNMENT        Ann Marie C. Villafana, AUSA

16
     FOR THE DEFENDANT         Michael Metz, ESQ.
17

18   Reporter                  Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768             Official Court Reporter
19                             701 Clematis Street, Suite 417
                               West Palm Beach, Florida  33401
20

21

22

23

24

25
```

Page 2

1          (Call to the order of the Court.)

2               THE COURT:  Good morning, please be seated.

3               All right.  This is the case of the United States

4     of America versus Marion Yarbrough, case

5     number 07-80099-CR-MARRA.

6               May I have counsel state their appearances, please.

7               MS. VILLAFANA:  Good morning, Your Honor, Marie

8     Villafana, on behalf of the United States.

9               THE COURT:  Good morning.

10              MR. METZ:  Good morning, Judge, Michael Metz, on

11    behalf of Mr. Yarbrough, who is present with us this morning.

12              THE COURT:  Good morning.

13              We are here for a change of plea?

14              MR. METZ:  Yes we are, Judge.  There is a plea

15    agreement.

16              THE COURT:  I have it.

17              MR. METZ:  Okay.  Judge, I would like to put, if I

18    could, just a couple of issues on the table or on the record

19    before we go into the plea colloquy.

20              THE COURT:  Okay.

21              MR. METZ:  Judge, as you know, both Ms. Villafana

22    and I have been working for several weeks to try to get this

23    plea in order, which it appears that we have now done so, to

24    the satisfaction of Mr. Yarbrough.  But I do want to just put

25    two particular issues on the record that I have discussed

1    with Mr. Yarbrough.  I don't expect the Court to make any

2    rulings on these issues, but I just want them to be out on

3    the record.

4           There is -- there are two issues in particular that

5    relate to the plea agreement, because there were many

6    different drafts.  One of the previous drafts had an actual

7    computation that the Government and Defense had agreed upon.

8    After conferring with probation, Ms. Villafana told me that

9    there was potentially an issue about whether or not there

10   would be by Probation an enhancement for serious injury

11   points, which I believe was an additional two-level increase.

12          I have talked to Mr. Yarbrough about it.  Without

13   disclosing the Defense's position on it, although I think

14   it's pretty obvious that -- where we would -- ultimately

15   where we would stand on it, we have discussed it.

16   Mr. Yarbrough is aware that Probation in the PSI could in

17   fact request it, but that ultimately will be up to the Court

18   to make a decision as to which enhancements, amongst them

19   all, will actually be used in its computation.

20          Second, Judge, there is an issue potentially about

21   Mr. Yarbrough's criminal history.  I have obtained a copy of

22   the NCIC from Ms. Villafana.  I have talked at length several

23   times with Mr. Yarbrough about his criminal history.  The

24   issue is whether or not he's going to be a Category 5 or if

25   he's going to be a Category 6 and characterized or classified

1    as a career criminal offender.

2            I just want those two issues to be on the table,

3    because I don't know in the end, after Probation prepares its

4    PSI, where they're going to come out, but I certainly know

5    that if there's issues there, that I have explained to

6    Mr. Yarbrough that the process of objecting to them and if

7    necessary putting on evidentiary testimony or otherwise to

8    refute it, and that ultimately it will be up to this court to

9    make the decision as to which enhancements do and do not

10   apply and to whether or not he is whatever the criminal

11   history category is.

12           So with that being said, I have no reason that we

13   cannot continue at this point.

14           THE COURT:  All right.  Can I have Mr. Yarbrough

15   approach the lecturn, please.

16      (The Defendant was duly sworn.)

17           THE COURTROOM DEPUTY:  Please state your name for

18   the record.

19           THE DEFENDANT:  Marion Yarbrough.

20           Marion Yarbrough, Defendant, sworn.

21                        Examination

22   BY THE COURT:

23   Q    All right.  Mr. Yarbrough, do you understand, sir, that

24   you are now under oath, and if you make any false statements

25   to me during our discussion this morning, those false

1   statements could later be used against you in a prosecution

2   for perjury or making a false statement?

3   A    Yes, sir.

4   Q    How old are you?

5   A    Thirty-four.

6   Q    I'm sorry?

7   A    Thirty-five.

8   Q    Thirty-five?

9        Okay.  Have you taken any drugs, medicine or

10  alcohol that might affect your ability to understand today's

11  proceedings or affect your ability on make a knowing and

12  intelligent decision regarding this case?

13  A    No, sir.

14  Q    Can you read and write English?

15  A    Yes, sir.

16  Q    Have you ever been treated for or suffered from any type

17  of mental disease or illness?

18  A    I had -- I went to a mental evaluation, but other than

19  that, no.

20  Q    Okay.  And is that while you've been in custody?

21  A    No, sir.

22  Q    Okay.  When was that?

23  A    I think it was like 16, 16.

24  Q    When you were 16, yes?

25  A    I think so.  Fifteen or 16.

1    Q    All right.  And do you know what the result of that

2    evaluation revealed or determined?

3    A    No, sir.  I did like inpatient, and then I quit going.

4    Q    Okay.  So you -- they recommended some type of treatment

5    for you?

6    A    Yes, sir.  I was taking like group counseling.

7    Q    Do you remember what kind of a diagnosis they provided

8    to you, or do you have any idea what kind of a diagnosis or

9    condition they thought you had or suffered from?

10   A    No, sir.

11   Q    Okay.

12   A    I just remember the place I went to.

13   Q    All right.  And you said you went to counseling for some

14   period of time?

15   A    Yes, sir.

16   Q    About how long?

17   A    Maybe a month or two.

18   Q    And then you discontinued it?

19   A    Yes, sir.

20   Q    And that was your choice?

21   A    Yes, sir.

22   Q    And any issues since then in terms of mental health that

23   you've had any concerns about or have suffered from?

24   A    No, sir.

25   Q    All right.  Anything about whatever it was that you were

1    evaluated for when you were 16 or 17 that you believe is

2    affecting your ability to think clearly or make a knowing or

3    intelligent decision regarding this case?

4    A    No, sir.

5              THE COURT:  Do you need to speak to him?

6              MR. METZ:  No, Judge.  Ms. Villafana wasn't able to

7    hear him.

8              (To the Defendant)  If you can just make sure you

9    speak closer into the microphone.

10   BY THE COURT:

11   Q    All right.  So whatever the issue was when you were 16

12   or 17 and had the evaluation and went through some

13   counseling, whatever that issue was, it's not in any way

14   impacting your ability to think clearly or make a knowing and

15   intelligent decision in this case?

16   A    No, sir.

17   Q    Have you ever been treated for or suffered from any type

18   of mental disease -- excuse me, any type of drug or chemical

19   addictions?

20   A    No, sir.

21   Q    How much education have you had?

22   A    I went to the 11th, 11th grade.

23   Q    Okay.  Have you seen the indictment the United States

24   has filed in this case?

25             MR. METZ:  Judge, Mr. Yarbrough is indicating I

1    think he wants to ask me something.

2          THE COURT:  Okay.  Sure.

3       (Brief pause in proceedings.)

4          MR. METZ:  Okay.

5    BY THE COURT:

6    Q    All right.  Have you seen the indictment that's been

7    filed against you in this case?

8    A    Yes, sir.

9    Q    Did you read that indictment?

10   A    Yes, sir.

11   Q    Did you understand it after you read it yourself?

12   A    Yes, sir.

13   Q    Did you discuss the indictment with your attorney?

14   A    Yes, sir.

15   Q    And after you read it yourself and discussed it with

16   your attorney, did you have a full and complete understanding

17   of the charges that have been brought against you in this

18   case?

19   A    Yes, sir.

20   Q    Did you discuss with your attorney the evidence the

21   United States has gathered and intends to present against you

22   if this case were to proceed to a trial?

23   A    Yes, sir.

24   Q    Did you discuss with your attorney any defenses that you

25   might have to these charges?

```
 1   A    Yes, sir.

 2   Q    Do you believe your attorney has done everything he

 3   could to defend you in this case?

 4   A    Yes, sir.

 5   Q    Is there anything your attorney has not done that you

 6   believe he should have done in order to defend you in this

 7   case?

 8   A    Not that I know of.

 9   Q    So do you believe your attorney has provided competent

10   representation to you in this case?

11   A    Yes, sir.

12   Q    Now, Mr. Yarbrough, it's my understanding you and the

13   United States have reached an agreement between yourselves as

14   to how you believe this case should be resolved, and I've

15   been handed a document which is entitled a "Plea Agreement"

16   that I'm holding.

17              Have you seen this document that I'm holding?

18   A    Yes, sir.

19   Q    Did you read it?

20   A    Yes, sir.

21   Q    Did you discuss it fully and completely with your

22   attorney?

23   A    Yes, sir.

24   Q    And after you read it yourself and discussed it with

25   your attorney, did you have a full and complete understanding
```

1    of all the terms and provisions of this plea agreement?

2    A    Yes, sir.

3    Q    And after you read it and understood it, did you then

4    sign the plea agreement on the last page, page 9, that bottom

5    signature line, is that your signature?

6    A    Yes, sir.

7    Q    Did you sign this plea agreement freely and voluntarily?

8    A    Yes, sir.

9    Q    Did anyone force you or threaten you in any way to sign

10    this plea agreement?

11    A    No, sir.

12    Q    Did anyone force you or threaten you in any way in order

13    for you to come here today and change your plea from not

14    guilty to guilty?

15    A    No, sir.

16    Q    You're doing this freely and voluntarily?

17    A    Yes, sir.

18    Q    Now, Mr. Yarbrough, according to the plea agreement, you

19    are going to plead guilty to Count 2 of the indictment, and

20    in exchange for your agreement to plead guilty to Count 2 of

21    the indictment, the United States has agreed to dismiss

22    Counts 1 and 3 of the indictment after sentencing, and they

23    have also further agreed not to file or seek any enhanced

24    sentencing that could be imposed for the charges in this case

25    pursuant to federal law.

1          Do you understand that's part of the agreement?

2     A    Yes, sir.

3     Q    And do you understand, sir, that Count 2 of the

4     indictment to which you are pleading guilty charges that you

5     knowingly transported an individual, who is described in this

6     plea agreement as an individual with an initial "A", and this

7     individual "A" at the time was under the age of 18 years of

8     age, and that you transported this individual in interstate

9     commerce; that being from Palm Beach County, Florida, to the

10    state of Kentucky; and that you transported her in interstate

11    commerce with the intent to engage with that individual, "A",

12    in sexual activity, for which any person, that being you,

13    could be charged with a criminal offense in the state of

14    Kentucky, which is a violation of Title 18 of the United

15    States Code, Sections 2423(a), and 18 United States Code,

16    Section 2.

17         Do you understand that's the charge to which you're

18    pleading guilty?

19    A    Yes, sir.

20    Q    Now, sir, do you understand that the maximum term of

21    imprisonment that can be imposed upon you for this charge to

22    which you're pleading guilty is life in prison?

23    A    Yes, sir.

24    Q    Do you also understand, sir, that for this charge,

25    there's a mandatory minimum term of imprisonment of ten

Page 12

1    years?

2    A    Yes, sir.

3    Q    Do you understand that in addition to any term of

4    imprisonment that can be imposed upon you for this charge,

5    you can be placed on supervised release for a minimum of five

6    years and potentially for life?

7    A    Yes, sir.

8          THE COURT:  Now, what I didn't quite understand

9    from the plea agreement language, in looking at the mandatory

10   minimums that -- on this sheet that Ms. Villafana gave me to

11   help me refer to during the course of this colloquy, I wasn't

12   sure is the life supervised release mandatory life or

13   discretionary minimum five years up to life?

14          MS. VILLAFANA:  Up to life.

15          THE COURT:  Okay.  Okay.  So it's minimum five

16   years, and beyond that, discretionary up to life?

17          MR. METZ:  And that is our understanding, as well,

18   Judge.

19   BY THE COURT:

20   Q    Do you understand that, Mr. Yarbrough?

21   A    Yes, sir.

22   Q    And do you understand, sir, that in addition on any term

23   of imprisonment or term of --

24          I'm sorry, before I get to the next aspect of

25   potential sentence, do you understand that if you're placed

Page 13

1    on supervised release, which you will be for at least five

2    years, you would be required to follow and abide by certain

3    rules, regulations and conditions imposed by the Court?

4    A    Yes, sir.

5    Q    Do you understand if you violate or fail on comply with

6    the terms of your supervised release, you could be sent back

7    to prison for an additional period of time?

8    A    Yes, sir.

9    Q    Do you understand that in addition to any term of

10   imprisonment or term of supervised release, you could be

11   fined in this case up to $250,000?

12   A    Yes, sir.

13   Q    Do you also understand that you could be ordered to pay

14   restitution to reimburse anyone that may have suffered a loss

15   as a result of your conduct in this case?

16   A    Yes, sir.

17   Q    Do you understand that in addition to the potential

18   penalties that I've just discussed with you, that by pleading

19   guilty to this one count of the indictment, you would be

20   required to register as a sex offender in accordance with the

21   laws of whatever state you either live in, work in or attend

22   school?

23   A    Yes, sir.

24   Q    Do you also understand that by pleading guilty to this

25   one count of the indictment, a special assessment of $100

Page 14

1    would be imposed upon you at the time of sentencing?

2    A    Yes, sir.

3    Q    Now, Mr. Yarbrough, do you understand that in order for

4    me to determine an appropriate sentence to impose upon you in

5    this case, I am required to consider as one of the factors

6    what the Federal Sentencing Guidelines call for as what we

7    describe an advisory guideline sentence?

8    A    Yes, sir.

9    Q    Do you understand as I sit here today I do not have

10   sufficient information available to me for me to be able to

11   tell you today what the correct advisory guideline sentencing

12   range would be for your case?

13   A    Yes, sir.

14   Q    Do you understand in order for me to get the information

15   I need to make the determination as to the correct advisory

16   guideline sentencing range and the ultimate sentence, I am

17   going to ask the probation office to prepare what we call a

18   presentence investigation report?

19   A    Yes, sir.

20   Q    Do you understand the probation officer will investigate

21   the case for me and provide me with a detailed report which

22   will outline all the facts of the case, it will outline your

23   role or involvement in the case as compared to others that

24   may have been involved, it will provide me with information

25   about your background, including any criminal history that

1    you might have, and then based upon the information the

2    probation office gathers, they will make a recommendation to

3    me as to what they believe the correct advisory guideline

4    sentencing range is for your case?

5    A    Yes, sir.

6    Q    Do you understand once that report is prepared, you and

7    your attorney will have the opportunity to review the report,

8    and you will be able to file objections to anything in the

9    report that you believe is either factually or legally

10   incorrect?

11   A    Yes, sir.

12   Q    And, in particular, there are some issues that your

13   attorney has already outlined that may be areas that you

14   disagree with the probation officer, particularly with

15   respect to criminal history and whether or not there was some

16   kind of injury to the person known as "A", which might

17   increase potentially the advisory guideline range.

18          Do you understand that?

19   A    Yes, sir.

20   Q    Do you understand the United States has the same right

21   to review the report once it's prepared and file any

22   objections that they believe are appropriate?

23   A    Yes, sir.

24   Q    Do you understand once the report is prepared and any

25   objections are filed, we then will have a sentencing hearing,

1    at which time you and your attorney will have the opportunity

2    to present to me any evidence or argument in support of your

3    position as to what you believe the correct advisory

4    guideline sentencing range should be if you disagree with the

5    probation officer's conclusions?  You will also be able to

6    present evidence and argument in support of what sentence you

7    think I should impose in this case.  The United States has

8    the same right to present any evidence and argument in

9    support of its position regarding the advisory guideline

10   sentencing range if they disagree with the probation

11   officer's conclusions.  They also will be able to present

12   evidence and argument in support of what sentence they

13   believe I should impose in this case.

14          And after I've heard everything and reviewed

15   everything, I will then decide what the correct advisory

16   guideline sentencing range is for your case, and then I will

17   decide what the actual sentence will be.

18          Do you understand that's the procedure?

19   A    Yes, sir.

20   Q    So do you understand until we go through that entire

21   procedure and I actually make decisions at the time of

22   sentencing, no one knows for sure what the correct advisory

23   guideline sentencing range will turn out to be, and no one

24   knows for sure what the actual sentence will turn out to be?

25   A    Yes, sir.

1   Q     So even though your attorney may have advised you based

2   upon his understanding of the facts of the case and his

3   understanding of the law and the Sentencing Guidelines what

4   he thinks or believes in his best professional opinion the

5   advisory guideline sentencing range will turn out to be, or

6   what he thinks or believes the actual sentence may turn out

7   to be, my decisions may be different from what he's advised

8   you; do you understand that?

9   A     Yes, sir.

10   Q     Do you understand if you do not agree with the sentence

11   I impose in this case, that will not be a basis for you later

12   to change you're decision regarding your plea of guilty?

13   A     Yes, sir.

14   Q     Do you understand if the United States makes any

15   recommendations to me regarding sentencing in this case,

16   either in the plea agreement that you've signed or at the

17   time of sentencing, I'm not required to follow the

18   recommendations of the United States if I don't agree with

19   them?

20   A     Yes, sir.

21   Q     Do you understand if I do not follow any of the

22   recommendations of the United States regarding sentencing,

23   that also will not be a basis for you later to change your

24   decision regarding your plea of guilty?

25   A     Yes, sir.

1   Q    Do you understand that if you are given a prison

2   sentence in this case, that parole has been abolished, and

3   you would not be released from prison on parole?

4   A    Yes, sir.

5   Q    Do you understand that the Sentencing Guidelines that I

6   was discussing with you are advisory only, they are not

7   binding or mandatory, and therefore I can sentence you above,

8   or in excess of what the Sentencing Guidelines call for, or

9   below, or less than what the Sentencing Guidelines call for?

10  A    Yes, sir.

11  Q    Okay.  But you understand I can't sentence you to less

12  than ten years minimum; do you understand that?

13  A    Yes, sir.

14  Q    Has anyone made any promises or representations to you

15  as to what sentence I will impose in this case?

16  A    No, sir.

17  Q    Has anyone made any promises or representations to you

18  other than what's in the plea agreement that you signed?

19  A    No, sir.

20  Q    Has anyone made any promises or representations to you

21  other than what's in this plea agreement in order to convince

22  to you plead guilty in this case?

23  A    No, sir.

24  Q    Now, do you understand, sir, as part of the plea

25  agreement that you signed with the United States, in

1    paragraph 8 of the plea agreement, the United States has

2    agreed to recommend to me at the time of sentencing that you

3    receive a three-level reduction under the Sentencing

4    Guidelines in the offense level because you've accepted

5    responsibility in this case and have agreed to plead guilty?

6    But in order to get the benefit of that reduction --

7              I'm sorry.  Do you understand they have made that

8    recommendation?

9    A    Yes, sir.

10   Q    Okay.  And do you understand that if I conclude, for

11   whatever reason, you don't qualify for that reduction, I can

12   come to a different conclusion?

13   A    Yes, sir.

14   Q    Do you also understand that you and the United States

15   have agreed in paragraph 7 of the plea agreement that you

16   will jointly recommend to me that I sentence you within the

17   advisory guideline range that I conclude is appropriate in

18   this case?  You are not going to ask me to sentence you below

19   that advisory guideline range, and the United States is not

20   going to ask me to sentence you above that advisory guideline

21   range?

22   A    Yes, sir.

23   Q    And do you understand, again, sir, that that agreement

24   between yourself and the United States is not binding on me,

25   and I can come to a different conclusion if I believe that's

Page 20

1    appropriate?

2    A    Yes, sir.

3         MR. METZ:  Judge, may I just point out, in

4    paragraph 7, it actually, at the end there's a joint

5    recommendation that the parties recommending -- the parties

6    are recommending the low end of the advisory guideline range.

7         THE COURT:  Yes, I was going to get to that.

8         MR. METZ:  Okay.

9    BY THE COURT:

10   Q    And do you understand that in addition to recommending

11   that I sentence you within the advisory guideline range, both

12   you and the United States have agreed that I should sentence

13   you at the low end of whatever that guideline range turns out

14   to be?

15   A    Yes, sir.

16   Q    And, again, do you understand that I'm not required to

17   go along with that recommendation?

18   A    Yes, sir.

19   Q    Now, sir, do you understand that ordinarily when someone

20   is sentenced by the Court, that person has the right to take

21   an appeal and challenge the sentence before a higher court?

22   A    Yes, sir.

23   Q    Do you understand that in the plea agreement you've

24   signed, paragraph 10, you have agreed to give up or waive

25   your right to appeal the sentence in this case unless I

1    sentence you in excess of what the law permits, unless I

2    sentence you in excess or above what the Sentencing

3    Guidelines call for, or unless the United States decides to

4    appeal the sentence?  Unless one of those three things

5    occurs, you have agreed to give up or waive your right to

6    appeal the sentence in this case.

7    A    Yes, sir.

8    Q    Did you understand your right to appeal the sentence in

9    this case when you signed this plea agreement?

10   A    Yes, sir.

11   Q    Had you discussed that right with your attorney before

12   you signed the plea agreement?

13   A    Yes, sir.

14   Q    Did you give up your right to appeal the sentence in

15   this case freely and voluntarily?

16   A    Yes, sir.

17   Q    Did anyone force you or threaten you in any way to give

18   up that right?

19   A    No, sir.

20   Q    Now, sir, do you also understand in paragraph 9 of the

21   plea agreement, there are a number of subparagraphs going

22   from subparagraph A to subparagraph J, which set forth the

23   facts that you and the United States agree the United States

24   would be able to prove if this case were to proceed to a

25   trial?

1   A   Yes, sir.

2   Q   And have you read all of those facts that are set forth

3  in paragraph 9, subparagraphs A through J?

4   A   Yes, sir.

5   Q   And did you go over those facts with your attorney?

6   A   Yes, sir.

7   Q   And did you understand all the facts as they were set

8  forth in that paragraph and subparagraphs?

9   A   Yes, sir.

10   Q   And do you agree that those facts are true and correct?

11   A   Yes, sir.

12   Q   And do you agree that those facts set forth in

13  paragraph 9, subparagraphs A through J, support the charge

14  against you, as alleged in Count 2 of the indictment, and

15  support your plea of guilty to Count 2 of the indictment?

16   A   Yes, sir.

17   Q   Now, sir, do you understand that you have the right to

18  continue to plead not guilty in this case and have this case

19  tried before a jury?

20   A   Yes, sir.

21   Q   Do you understand that if you had a jury trial, you

22  would have the right to be represented by an attorney

23  throughout the trial, and if you could not afford an attorney

24  one would be appointed to represent you?

25   A   Yes, sir.

1    Q    Do you understand if you had a jury trial, you would be

2    presumed innocent of the charges that the United States has

3    brought against you, and the United States would be required

4    to prove your guilt to the jury beyond a reasonable doubt?

5    A    Yes, sir.

6    Q    Do you understand if you had a jury trial, you would

7    have the right to confront the witnesses that the United

8    States calls against you, you would have the right to have

9    those witnesses cross-examined in your presence, and you'd be

10   able to challenge all of the evidence the United States

11   presents during the case?

12   A    Yes, sir.

13   Q    Do you understand if you had a jury trial, you'd have

14   the right, if you chose to exercise it, to testify in your

15   own defense, you'd have the right to present other evidence

16   in your defense, and you would have the ability to subpoena

17   witnesses to compel them to come in and testify in your

18   defense?

19   A    Yes, sir.

20   Q    Do you understand if you had a jury trial, you would

21   also have the right under the United States Constitution not

22   to testify or present evidence against yourself if you chose

23   not to?

24   A    Yes, sir.

25   Q    Do you understand if you chose not to testify during the

1    trial, the United States would not be permitted to argue to

2    the jury that because you made that decision, the jury should

3    find you guilty?

4    A    Yes, sir.

5    Q    Do you understand if you had a jury trial and the jury

6    did find you guilty, you'd have the right to take an appeal

7    and challenge the conviction before a higher court?

8    A    Yes, sir.

9    Q    Do you understand by pleading guilty in this case, you

10   will give up your right to a jury trial and all the rights

11   that are an aspect of the jury trial that we've just

12   discussed?

13   A    Yes, sir.

14   Q    Do you also understand by pleading guilty in this case,

15   you will be adjudicated guilty of felony offense, and as a

16   result, you could be deprived of valuable civil rights, such

17   as the right to vote, the right to hold public office, the

18   right to serve on a jury and the right to possess any type of

19   firearm?

20   A    Yes, sir.

21   Q    Do you also understand that if you are not a United

22   States citizen, by pleading guilty in this case you could be

23   deported from this country and not permitted to return?

24   A    Yes, sir.

25   Q    Do you also understand, sir, that in order for the

Page 25

1    United States to prove this case to a jury, and/or for you to

2    be convicted of this charge in Count 2, the United States

3    would have to present sufficient evidence to prove the

4    following elements?

5           First, that you did, in fact, aid, abet and cause

6    the transportation of this individual known as "A" from

7    Florida to Kentucky;

8           Second, that you did so with the intent that "A"

9    engage in sexual activity for which any person can be charged

10   with a criminal offense;

11          Third, that "A" was under the age of 18 years at

12   the time; and

13          Fourth, that the Defendant acted knowingly -- that

14   you acted knowingly in doing all those things?

15   A    Yes, sir.

16   Q    And, again, do you agree that all the facts set forth in

17   paragraph 9, subsections A through J, would prove those

18   elements?

19   A    Yes, sir.

20   Q    All right.  Based upon the facts set forth in

21   paragraph 9, subparagraphs A through J of the plea agreement,

22   how do you plead to Count 2 of the indictment, guilty or not

23   guilty?

24          MR. METZ:  Judge, may I just have one moment?

25          THE COURT:  Yes.

Page 26

1           MR. METZ:  Thanks.

2       (Brief pause in proceedings.)

3           MR. METZ:  I think we're ready to proceed, Judge.

4   BY THE COURT:

5   Q    All right.  Mr. Yarbrough, again, based upon the facts

6   that are set forth in paragraph 9, subparagraphs A through J,

7   how do you plead to Count 2 of the indictment, guilty or not

8   guilty?

9   A    Guilty.

10          THE COURT:  All right.  Is there anything else I

11  need to cover with the Defendant before I accept his plea?

12          MS. VILLAFANA:  No, Your Honor.

13          THE COURT:  Mr. Metz?

14          MR. METZ:  Nothing.

15          THE COURT:  In the case of the United States of

16  America versus Marion Yarbrough, it is hereby the finding of

17  the Court that the Defendant is fully competent and capable

18  of entering an informed plea, that he is aware of the nature

19  of the charge and the consequences of the plea, that his plea

20  of guilty is a knowing and voluntary plea, supported by an

21  independent basis in fact containing each of the essential

22  elements of the offense.

23          The Court also finds the Defendant has made a

24  knowing, intelligent and voluntary waiver of his right to

25  appeal the sentence in this case.

1          The plea is therefore accepted, and the Defendant

2    is now adjudged guilty of Count 2 of the indictment.

3          Now, Mr. Yarbrough, as I mentioned, I'm going to

4    order the probation office to prepare the presentence

5    investigation report.  You have the right, if you choose to,

6    to participate in the preparation of that report.  If you

7    wish to meet with the probation officer who prepares the

8    report, your attorney may be present with you at that time.

9    And once the report's prepared, as we discussed earlier,

10   you'll have the right to review the report with your attorney

11   and file objections, as will the United States.  And we will

12   discuss the report and any objections at the time of

13   sentencing, which I will schedule for June 13, 2008, at 10

14   a.m., here in West Palm Beach.

15         All right.  So we will see you then.

16         MR. METZ:  Thank you, Judge.

17         THE COURT:  Thank you.

18         MS. VILLAFANA:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20   (Proceedings concluded.)

21

22

23

24

25

Page 28

```
 1                          * * * * *

 2                       I N D E X

 3   Testimony of Marion Yarbrough

 4          Examination by the Court              4

 5                          * * * * *

 6                    E X H I B I T S

 7   (None.)

 8                          * * * * *

 9                       CERTIFICATE

10        I, Stephen W. Franklin, Registered Merit Reporter, and

11   Certified Realtime Reporter, certify that the foregoing is a

12   correct transcript from the record of proceedings in the

13   above-entitled matter.

14        Dated this 9th day of NOVEMBER, 2008.

15

16          /s/Stephen W. Franklin
          _____
17        Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```

**A**

**abet (1)** 25:5
**abide (1)** 13:2
**ability (5)** 5:10,11 7:2,14 23:16
**able (7)** 7:6 14:10 15:8 16:5,11 21:24 23:10
**abolished (1)** 18:2
**above-entitled (1)** 28:13
**accept (1)** 26:11
**accepted (2)** 19:4 27:1
**acted (2)** 25:13,14
**activity (2)** 11:12 25:9
**actual (4)** 3:6 16:17,24 17:6
**addictions (1)** 7:19
**addition (5)** 12:3,22 13:9,17 20:10
**additional (2)** 3:11 13:7
**adjudged (1)** 27:2
**adjudicated (1)** 24:15
**advised (2)** 17:1,7
**advisory (16)** 14:7,11,15 15:3,17 16:3,9,15,22
   17:5 18:6 19:17,19,20 20:6,11
**affect (2)** 5:10,11
**afford (1)** 22:23
**age (3)** 11:7,8 25:11
**agree (6)** 17:10,18 21:23 22:10,12 25:6
**agreed (9)** 3:7 10:21,23 19:2,5,15 20:12,24 21:5
**agreement (25)** 2:15 3:5 9:13,15 10:1,4,7,10,18
   10:20 11:1,6 12:9 17:16 18:18,21,25 19:1,15
   19:23 20:23 21:9,12,21 25:21
**aid (1)** 25:5
**alcohol (1)** 5:10
**alleged (1)** 22:14
**America (3)** 1:3 2:4 26:16
**and/or (1)** 25:1
**Ann (1)** 1:15
**appeal (8)** 20:21,25 21:4,6,8,14 24:6 26:25
**appearances (2)** 1:14 2:6
**appears (1)** 2:23
**apply (1)** 4:10
**appointed (1)** 22:24
**approach (1)** 4:15
**appropriate (4)** 14:4 15:22 19:17 20:1
**April (1)** 1:7
**areas (1)** 15:13
**argue (1)** 24:1
**argument (4)** 16:2,6,8,12
**aspect (2)** 12:24 24:11
**assessment (1)** 13:25
**attend (1)** 13:21
**attorney (19)** 8:13,16,20,24 9:2,5,9,22,25 15:7,13
   16:1 17:1 21:11 22:5,22,23 27:8,10
**AUSA (1)** 1:15
**available (1)** 14:10
**aware (2)** 3:16 26:18
**a.m (1)** 27:14

**B**

**B (1)** 28:6
**back (1)** 13:6
**background (1)** 14:25
**based (4)** 15:1 17:1 25:20 26:5
**basis (3)** 17:11,23 26:21
**Beach (4)** 1:7,19 11:9 27:14
**behalf (2)** 2:8,11
**believes (2)** 3:11 7:1 9:2,6,9,14 15:3,9,22 16:3,13
   19:25
**believes (2)** 17:4,6
**benefit (1)** 19:6
**best (1)** 17:4
**beyond (2)** 12:16 23:4
**binding (2)** 18:7 19:24
**bottom (1)** 10:4
**Brief (2)** 8:3 26:2
**brought (2)** 8:17 23:3

**C**

**C (1)** 1:15
**call (6)** 2:1 14:6,17 18:8,9 21:3
**calls (1)** 23:8
**capable (1)** 26:17
**career (1)** 4:1
**case (48)** 1:3 2:3,4 5:12 7:3,15,24 8:7,18,22 9:3,7
   9:10,14 10:24 13:11,15 14:5,12,21,22,23 15:4
   16:7,13,16 17:2,11,15 18:2,15,22 19:5,18
   20:25 21:6,9,15,24 22:18,18 23:11 24:9,14,22
   25:1 26:15,25
**category (3)** 3:24,25 4:11
**cause (1)** 25:5
**certain (1)** 13:2
**certainly (1)** 4:4
**CERTIFICATE (1)** 28:9
**Certified (1)** 28:11
**certify (1)** 28:11
**challenge (3)** 20:21 23:10 24:7
**change (5)** 1:10 2:13 10:13 17:12,23
**characterized (1)** 3:25
**charge (7)** 11:17,21,24 12:4 22:13 25:2 26:19
**charged (1)** 11:13 25:9

**charges (5)** 8:17,25 10:24 11:4 23:2
**chemical (1)** 7:18
**choice (1)** 6:20
**choose (1)** 27:5
**chose (3)** 23:14,22,25
**citizen (1)** 24:22
**civil (1)** 24:16
**classified (1)** 3:25
**clearly (1)** 7:2,14
**Clematis (1)** 1:19
**closer (1)** 7:9
**Code (2)** 11:15,15
**colloquy (2)** 2:19 12:11
**come (5)** 4:4 10:13 19:12,25 23:17
**commerce (2)** 11:9,11
**compared (1)** 14:23
**compel (1)** 23:17
**competent (2)** 9:9 26:17
**complete (2)** 8:16 9:25
**completely (1)** 9:21
**comply (1)** 13:5
**computation (2)** 3:7,19
**concerns (1)** 6:23
**conclude (2)** 19:10,17
**concluded (1)** 17:20
**conclusion (2)** 19:12,25
**conclusions (2)** 16:5,11
**condition (1)** 6:9
**conditions (1)** 13:3
**conduct (1)** 13:15
**conferring (1)** 3:8
**confront (1)** 23:7
**consequences (1)** 26:19
**consider (1)** 14:5
**Constitution (1)** 23:21
**containing (1)** 26:21
**continue (2)** 4:13 22:18
**convicted (1)** 25:2
**conviction (1)** 24:7
**convince (1)** 18:21
**copy (1)** 3:21
**correct (8)** 14:11,15 15:3 16:3,15,22 22:10 28:12
**counsel (1)** 2:6
**counseling (3)** 6:6,13 7:13
**count (11)** 10:19,20 11:3 13:19,25 22:14,15 25:2
   25:22 26:7 27:2
**country (1)** 24:23
**Counts (1)** 10:22
**County (1)** 11:9
**couple (1)** 2:18
**course (1)** 12:11
**court (16)** 1:1,8 2:1,2,9,12,16,20 3:1,17 4:8,14
   4:22 7:5,10 8:2,5 12:8,15,19 13:3 20:7,9,20,21
   24:7 25:25 26:4,10,13,15,17,23 27:17,19 28:4
**COURTROOM (1)** 4:17
**cover (1)** 26:11
**CPE (1)** 1:18
**criminal (3)** 3:21,23 4:1,10 11:13 14:25 15:15
   25:10
**cross-examined (1)** 23:9
**CRR (2)** 1:18 28:17
**custody (1)** 5:20

**D**

**D (1)** 28:2
**Dated (1)** 28:14
**day (1)** 28:14
**decide (2)** 16:15,17
**decides (1)** 21:3
**decision (8)** 3:18 4:9 5:12 7:3,15 17:12,24 24:2
**decisions (2)** 16:21 17:7
**defend (2)** 9:3,6
**Defendant (11)** 1:7,16 4:16,19,20 7:8 25:13 26:11
   26:17,23 27:1
**defense (4)** 3:7 23:15,16,18
**defenses (1)** 8:24
**Defense's (1)** 3:13
**deported (1)** 24:23
**deprived (1)** 24:16
**DEPUTY (1)** 4:17
**describe (1)** 14:7
**described (1)** 11:5
**detailed (1)** 14:21
**determination (1)** 14:15
**determine (1)** 14:4
**determined (1)** 6:2
**diagnosis (2)** 6:7,8
**different (4)** 3:6 17:7 19:12,25
**disagree (3)** 15:14 16:4,10
**disclosing (1)** 3:13
**discontinued (1)** 6:18
**discretionary (2)** 12:13,16
**discuss (5)** 8:13,20,24 9:21 27:12
**discussed (8)** 2:25 3:15 8:15 9:24 13:18 21:11
   24:12 27:9
**discussing (1)** 18:6
**discussion (1)** 4:25
**disease (2)** 5:17 7:18

**dismiss (1)** 10:21
**DISTRICT (3)** 1:1,1,12
**document (2)** 9:15,17
**doing (2)** 10:16 25:14
**doubt (1)** 23:4
**drafts (2)** 3:6,6
**drug (1)** 7:18
**drugs (1)** 5:9
**duly (1)** 4:16

**E**

**E (2)** 28:2,6
**earlier (1)** 27:9
**education (1)** 7:21
**either (3)** 13:21 15:9 17:16
**elements (3)** 25:4,18 26:22
**engage (2)** 11:11 25:9
**English (1)** 5:14
**enhanced (1)** 10:23
**enhancement (1)** 3:19
**enhancements (2)** 3:18 4:9
**entering (1)** 26:18
**entire (1)** 16:20
**entitled (1)** 9:15
**ESQ (1)** 1:16
**essential (1)** 26:21
**evaluated (1)** 7:1
**evaluation (3)** 5:18 6:2 7:12
**evidence (9)** 8:20 16:2,6,8,12 23:10,15,22 25:3
**evidentiary (1)** 4:7
**Examination (2)** 4:21 28:4
**excess (3)** 18:8 21:1,2
**exchange (1)** 10:20
**exercise (1)** 23:14
**expect (1)** 3:1
**explained (1)** 4:5

**F**

**fact (3)** 3:17 25:5 26:21
**factors (1)** 14:1
**facts (11)** 14:22 17:2 21:23 22:2,5,7,10,12 25:16
   25:20 26:5
**factually (1)** 15:9
**fail (1)** 13:5
**false (3)** 4:24,25 5:2
**federal (2)** 10:25 14:6
**felony (1)** 24:15
**Fifteen (1)** 5:25
**file (4)** 10:23 15:8,21 27:11
**filed (3)** 7:24 8:7 15:25
**final (2)** 24:3,6
**finding (1)** 26:16
**finds (1)** 26:23
**fined (1)** 13:11
**firearm (1)** 24:19
**First (1)** 25:5
**five (4)** 12:5,13,15 13:1
**Florida (5)** 1:1,7,19 11:9 25:7
**follow (3)** 12:2 17:17,21
**following (1)** 25:4
**force (3)** 10:9,12 21:17
**foregoing (1)** 28:11
**forth (7)** 21:22 22:2,8,12 25:16,20 26:6
**Fourth (1)** 23:15
**Franklin (4)** 1:18 28:10,16,17
**freely (3)** 10:7,16 21:15
**full (2)** 8:16 9:25
**fully (2)** 9:21 26:17
**further (1)** 10:23

**G**

**gathered (1)** 8:21
**gathers (1)** 15:2
**give (5)** 20:24 21:5,14,17 24:10
**given (1)** 18:1
**go (4)** 2:19 16:20 20:17 22:5
**going (3)** 3:24,25 4:4 6:3 10:19 14:17 19:18,20
   20:7 21:21 27:3
**Good (5)** 2:2,7,9,10,12
**Government (2)** 1:15 3:7
**grade (1)** 7:22
**group (1)** 6:6
**guideline (16)** 14:7,11,16 15:3,17 16:4,9,16,23
   17:12,18 18:22 19:5 22:15,18 24:3,6,9,14,15
   24:22 25:22,23 26:7,8,9,20 27:2
**guilt (1)** 23:4
**guilty (28)** 10:14,14,19,20 11:4,18,22 13:19,24
   17:12,24 18:22 19:5 22:15,18 24:3,6,9,14,15
   24:22 25:22,23 26:7,8,9,20 27:2

**H**

**H (1)** 28:6
**handed (1)** 9:15
**health (1)** 6:22
**hear (1)** 7:7

**heard (1)** 16:14
**hearing (1)** 5:15
**help (1)** 12:11
**higher (2)** 20:21 24:7
**history (5)** 3:21,23 4:11 14:25 15:15
**hold (1)** 24:17
**holding (2)** 9:16,17
**Honor (3)** 2:7 26:12 27:18
**HONORABLE (1)** 1:11

**I**

**idea (1)** 6:8
**illness (1)** 5:17
**impacting (1)** 7:14
**impose (5)** 14:4 16:7,13 17:11 18:15
**imposed (5)** 10:24 11:21 12:4 13:13 14:1
**imprisonment (5)** 11:21,25 12:4,23 13:10
**including (1)** 14:25
**incorrect (1)** 15:10
**increase (2)** 3:11 15:17
**independent (1)** 16:21
**indicating (1)** 7:25
**indictment (15)** 7:23 8:6,9,13 10:19,21,22 11:4
   13:19,25 22:14,15 25:22 26:7 27:2
**individual (6)** 11:5,6,7,8,11 25:6
**information (4)** 14:10,14,24 15:1
**informed (1)** 26:18
**initial (1)** 11:6
**injury (2)** 3:10 15:16
**innocent (1)** 23:2
**inpatient (1)** 6:3
**intelligent (4)** 5:12 7:3,15 26:24
**intends (1)** 8:21
**intent (2)** 11:11 25:8
**interstate (1)** 11:8,10
**investigate (1)** 14:20
**investigation (2)** 14:18 27:5
**involved (1)** 14:24
**involvement (1)** 14:23
**issue (5)** 3:9,20,24 7:11,13
**issues (8)** 2:18,25 3:2,4 4:2,5 6:22 15:12

**J**

**J (6)** 21:22 22:3,13 25:17,21 26:6
**joint (1)** 20:4
**jointly (1)** 19:16
**Judge (13)** 1:12 2:10,14,17,21 3:20 7:6,25 12:18
   20:3 25:24 26:3 27:16
**June (1)** 28:14
**jury (15)** 22:19,21 23:1,4,6,13,20 24:2,2,5,5,10,11
   24:18 25:1

**K**

**KENNETH (1)** 1:11
**Kentucky (3)** 1:10,14 25:7
**kind (5)** 6:7,8 15:16
**know (5)** 2:24 4:3,4 6:1 9:8
**knowing (5)** 5:11 7:2,14 24:20,24
**knowingly (3)** 11:5 25:13,14
**knows (2)** 15:16 25:6
**knows (2)** 16:22,24

**L**

**language (1)** 5:9
**law (3)** 10:25 17:3 21:1
**laws (1)** 13:21
**lecture (1)** 4:15
**legally (1)** 15:9
**length (1)** 3:22
**level (1)** 19:4
**life (7)** 11:22 12:6,12,12,13,14,16
**line (1)** 10:5
**live (1)** 13:21
**long (1)** 6:16
**looking (1)** 12:9
**loss (1)** 13:14
**low (2)** 20:6,13

**M**

**making (1)** 5:2
**mandatory (4)** 11:25 12:9,12 18:7
**Marie (1)** 1:15 2:7
**Marion (6)** 1:6 2:4,9,20 26:16 28:3
**MARRA (1)** 1:11
**matter (1)** 28:13
**maximum (1)** 11:20
**medicine (1)** 5:9
**meet (1)** 27:7
**mental (4)** 5:17,18 6:22 7:18
**mentioned (1)** 27:3
**Merit (1)** 28:10
**Metz (18)** 1:16 2:10,10,14,17,21 7:6,25 8:4 12:17
   20:3,8 25:24 26:1,3,13,14 27:16
**Michael (2)** 1:16 2:10
**microphone (1)** 7:9
**minimum (5)** 11:25 12:5,13,15 18:12

**minimums (1)** 12:10
**moment (1)** 25:24
**month (1)** 6:17
**morning (7)** 2:2,7,9,10,11,12 4:25

**N**

**N (1)** 28:2
**name (1)** 4:17
**nature (1)** 26:18
**NCIC (1)** 3:22
**necessary (1)** 4:7
**need (3)** 7:5 14:15 26:11
**NOVEMBER (1)** 28:14
**number (2)** 2:5 21:21

**O**

**oath (1)** 4:24
**objecting (1)** 4:6
**objections (5)** 15:8,22,25 27:11,12
**obtained (1)** 3:21
**obvious (1)** 3:14
**occurs (1)** 21:5
**offender (2)** 4:1 13:20
**offense (1)** 11:13 19:4 24:15 25:10 26:22
**office (4)** 14:17 15:2 24:17 27:4
**officer (3)** 14:20 15:14 27:7
**officer's (2)** 16:5,11
**Official (1)** 1:18
**Okay (15)** 2:17,20 5:9,20,22 6:4,11 7:23 8:2,4
12:15,15 18:11 19:10 20:8
**old (1)** 5:4
**once (4)** 15:6,21,24 27:9
**opinion (1)** 17:4
**opportunity (2)** 15:7 16:1
**order (10)** 2:1,23 9:6 10:12 14:3,14 18:21 19:6
24:25 27:4
**ordered (1)** 13:13
**ordinarily (1)** 20:19
**outline (2)** 14:22,22
**outlined (1)** 15:13

**P**

**page (2)** 10:4,4
**Palm (4)** 1:7,19 11:9 27:14
**paragraph (11)** 19:1,15 20:4,24 21:20 22:3,8,13
25:17,21 26:6
**parole (2)** 18:2,3
**part (2)** 11:1 18:24
**participate (1)** 27:6
**particular (3)** 2:25 3:4 15:12
**particularly (1)** 15:14
**parties (2)** 20:5,5
**pause (2)** 8:3 26:2
**pay (1)** 13:13
**penalties (1)** 13:18
**period (2)** 6:14 13:7
**perjury (1)** 5:2
**permits (1)** 21:1
**permitted (2)** 24:1,23
**person (4)** 11:12 15:16 20:20 25:9
**place (1)** 6:12
**placed (2)** 12:5,25
**Plaintiff (1)** 1:4
**plea (35)** 1:10 2:13,14,19,23 3:5 9:15 10:1,4,7,10
10:13,18 11:6 12:9 17:12,16,24 18:18,21,24
19:1,15 20:23 21:9,12,22 22:15 25:21 26:11,18
26:19,19,20 27:1
**plead (7)** 10:19,20 18:22 19:5 22:18 25:22 26:7
**pleading (8)** 11:4,18,22 13:18,24 24:9,14,22
**please (4)** 2:2,6 4:15,17
**point (2)** 4:13 20:3
**points (1)** 3:11
**position (3)** 3:13 16:3,9
**possess (1)** 24:18
**potential (2)** 12:25 13:17
**potentially (4)** 3:9,20 12:6 15:17
**preparation (1)** 27:6
**prepare (2)** 14:17 27:4
**prepared (4)** 15:6,21,24 27:9
**prepares (2)** 4:3 27:7
**presence (1)** 23:9
**present (10)** 2:11 8:21 16:2,6,8,11 23:15,22 25:3
27:8
**presentence (2)** 14:18 27:4
**presents (1)** 23:11
**presumed (1)** 23:2
**pretty (1)** 3:14
**previous (1)** 3:6
**prison (1)** 11:22 13:7 18:1,3
**probation (3)** 3:8,10,16 4:3 14:17,20 15:2,14
16:5,10 27:4,7
**procedure (2)** 16:18,21
**proceed (3)** 8:22 21:24 26:3
**proceedings (6)** 1:10 5:11 8:3 26:2 27:20 28:12
**process (1)** 4:6
**professional (1)** 17:4
**promises (3)** 18:14,17,20

**prosecution (1)** 5:1
**prove (5)** 21:24 23:4 25:1,3,17
**provide (2)** 14:21,24
**provided (2)** 6:7 9:9
**provisions (1)** 10:1
**PSI (2)** 3:16 4:4
**public (1)** 24:17
**pursuant (1)** 10:25
**put (2)** 2:17,24
**putting (1)** 4:7

**Q**

**qualify (1)** 19:11
**quit (1)** 6:3
**quite (1)** 12:8

**R**

**range (15)** 14:12,16 15:4,17 16:4,10,16,23 17:5
19:17,19,21 20:6,11,13
**reached (1)** 9:13
**read (8)** 5:14 8:9,11,15 19:19,24 10:3 22:2
**ready (1)** 26:3
**Realtime (1)** 28:11
**reason (2)** 4:12 19:11
**reasonable (1)** 23:4
**receive (1)** 19:3
**recommend (2)** 19:2,16
**recommendation (4)** 15:2 19:8 20:5,17
**recommendations (3)** 17:15,18,22
**recommended (1)** 6:4
**recommending (3)** 20:5,6,10
**record (5)** 2:18,25 3:3 4:18 28:12
**reduction (3)** 19:3,6,11
**refer (1)** 12:11
**refute (1)** 4:8
**regarding (7)** 5:12 7:3 16:9 17:12,15,22,24
**register (1)** 13:20
**Registered (1)** 28:10
**regulations (1)** 13:3
**reimburse (1)** 13:14
**relate (1)** 3:5
**release (5)** 12:5,12 13:1,6,10
**released (1)** 18:3
**remember (2)** 6:7,12
**report (12)** 14:18,21 15:6,7,9,21,24 27:6,8,6,10,12
23:14,15,21 24:6,10,17,17,18,18 25:20 26:5,10
26:24 27:5,10,15
**rights (2)** 24:10,16
**RMR (1)** 1:18 28:17
**role (1)** 14:23
**rules (1)** 3:3
**rulings (1)** 3:2

**S**

**S (1)** 28:6
**satisfaction (1)** 2:24
**schedule (1)** 27:13
**school (1)** 13:22
**seated (1)** 2:2
**Second (2)** 3:20 25:8
**Section (1)** 11:16
**Sections (1)** 11:15
**see (1)** 27:15
**seek (1)** 10:23
**seen (3)** 7:23 8:6 9:17
**sent (1)** 13:6
**sentence (28)** 12:25 14:4,7,16 16:6,12,17,24 17:6
17:10 18:2,7,11,15 19:16,18,20 20:11,12,21,25
21:1,2,4,6,8,14 26:6
**sentenced (1)** 20:20
**sentencing (25)** 10:22,24 14:1,6,11,16 15:4,9,25
16:4,10,16,22,23 17:3,5,15,17,22 18:5,8,9 19:2
25:12 27:8,13
**serious (1)** 3:10
**serve (1)** 24:18
**set (7)** 21:22 22:2,7,12 25:16,20 26:6
**sex (1)** 13:20
**sexual (2)** 11:12 25:9

**sheet (1)** 12:10
**sign (1)** 30:4,7,9
**signature (2)** 10:5,5
**signed (6)** 17:16 18:18,25 20:24 21:9,12
**sir (105)** 4:23 5:3,13,15,21 6:3,6,10,15,19,21,24
7:4,16,20 8:8,10,12,14,19,23 9:1,4,11,18,20,23
10:2,6,8,11,15,17 11:2,3,19,20,23,24 12:2,7,21
12:22 13:4,8,12,16,23 14:2,8,13,19 15:5,11,19
15:23 16:19,25 17:9,13,20,25 18:4,10,13,16,19
18:23,24 19:9,13,22,23 20:2,5,18,19,22 21:7
21:10,13,16,19,20 22:1,4,6,9,11,16,17,20,25
23:5,12,19,24 24:4,8,13,20,24,25 25:15,19
**sit (1)** 14:9
**sorry (5)** 5:6 12:24 19:7
**SOUTHERN (1)** 1:1
**speak (2)** 7:5,9
**special (1)** 13:25
**stand (1)** 3:15
**state (5)** 4:17 11:10,13 13:21
**statement (1)** 5:2
**statements (2)** 4:24 5:1
**States (35)** 1:1,3 2:3,8 7:23 8:21 9:13 10:21 11:15
11:15 15:20 16:7 17:14,18,22 18:25 19:1,14,19
19:24 20:22 21:3,23,23 23:2,3,8,10,21 24:1,22
25:1,2 26:15 27:11
**Stephen (3)** 1:18 28:10,17
**Street (1)** 1:19
**subparagraph (2)** 21:22,22
**subparagraphs (6)** 21:21 22:3,8,13 25:21 26:6
**subpoena (1)** 23:16
**subsections (1)** 25:17
**suffered (5)** 5:16 6:9,23 7:17 13:14
**sufficient (2)** 14:10 25:3
**Suite (1)** 1:19
**supervised (5)** 12:5,12 13:1,6,10
**support (6)** 16:2,6,9,12 22:13,15
**supported (1)** 26:20
**sure (5)** 7:8 8:2 12:12 16:22,24
**sworn (2)** 4:16,20
**s/Stephen (1)** 28:16

**T**

**T (1)** 28:6
**table (2)** 2:18 4:2
**take (2)** 20:20 24:6
**taken (1)** 5:9
**talked (2)** 3:12,22
**tell (1)** 14:11
**ten (2)** 11:25 18:12
**term (7)** 11:20,25 12:3,22,23 13:9,10
**terms (3)** 6:22 10:1 13:6
**testify (4)** 23:14,17,22,25
**testimony (2)** 4:7 28:3
**Thank (4)** 27:16,17,18,19
**Thanks (1)** 26:1
**things (2)** 21:4 25:14
**think (8)** 3:13 5:23,25 7:2,14 8:1 16:7 26:3
**thinks (2)** 17:4,6
**Third (1)** 25:11
**Thirty-five (2)** 5:7,8
**Thirty-four (1)** 5:5
**thought (1)** 6:9
**threaten (3)** 10:9,12 21:17
**three (1)** 21:4
**three-level (1)** 19:3
**time (11)** 6:14 11:7 13:7 14:1 16:1,21 17:17 19:2
25:12 27:8,12
**times (1)** 3:23
**Title (1)** 11:14
**today (3)** 10:13 14:9,11
**today's (1)** 5:10
**told (1)** 8:8
**transcript (2)** 1:10 28:12
**transportation (1)** 25:6
**transported (3)** 11:5,8,10
**treated (2)** 5:16 7:17
**treatment (1)** 6:4
**trial (12)** 8:22 21:25 22:21,23 23:1,6,13,20 24:1,5
24:10,11
**tried (1)** 22:19
**true (1)** 22:10
**try (1)** 2:22
**turn (4)** 16:23,24 17:5,6
**turns (1)** 20:13
**two (4)** 2:25 3:4 4:2 6:17
**two-level (1)** 3:1
**type (5)** 5:16 6:4 7:17,18 24:18

**U**

**ultimate (1)** 14:16
**ultimately (3)** 3:14,17 4:8
**understand (60)** 4:23 5:10 8:11 11:1,3,17,20,24
12:3,8,20,22,25 13:5,9,13,17,24 14:3,9,14,20
15:6,18,20,24 16:3,20 17:8,10,14,21 18:1,5
18:11,12,24 19:7,10,14,23 20:10,16,19,23 21:8
21:20 22:7,17,21 23:1,6,13,20,25 24:5,9,14,21
24:25
**understanding (6)** 8:16 9:12,25 12:17 17:2,3

**understood (1)** 10:3
**United (35)** 1:1,3 2:3,8 7:23 8:21 9:13 10:21
11:15,15 15:20 16:7 17:14,18,22 18:25 19:1,14
19:19,24 20:12 21:3,23,23 23:2,3,7,10,21 24:1
24:21 25:1,2 26:15 27:11
**U.S (1)** 1:12

**V**

**v (1)** 1:5
**valuable (1)** 24:16
**versus (2)** 2:4 26:16
**Villafana (1)** 1:15 2:7,8,21 3:8,22 7:6 12:10,14
26:12 27:18
**violate (1)** 13:5
**violation (1)** 11:14
**voluntarily (3)** 10:7,16 21:15
**voluntary (2)** 26:20,24
**vote (1)** 24:17

**W**

**W (4)** 1:18 28:10,16,17
**waive (2)** 20:24 21:5
**waiver (1)** 26:24
**want (3)** 2:24 3:2 4:2
**wants (1)** 8:1
**wasn't (2)** 7:6 12:11
**way (4)** 7:13 10:9,12 21:17
**weeks (1)** 2:22
**went (5)** 5:18 6:12,13 7:12,22
**West (3)** 1:7,19 27:14
**we're (1)** 26:3
**we've (1)** 24:11
**wish (1)** 27:7
**witnesses (3)** 23:7,9,17
**work (1)** 13:21
**working (1)** 2:22
**write (1)** 5:14

**X**

**X (2)** 28:2,6

**Y**

**Yarbrough (22)** 1:6 2:4,11,24 3:1,12,16,23 4:6,14
4:19,20,23 7:25 9:12 10:18 12:20 14:3 26:5,16
27:3 28:3
**Yarbrough's (1)** 3:21
**years (8)** 11:7 12:1,6,13,16 13:2 18:12 25:11

**$**

**$100 (1)** 13:25
**$250,000 (1)** 13:11

**0**

**07-80099-CR-MARRA (1)** 1:3 2:5

**1**

**1 (1)** 10:22
**10 (2)** 20:24 27:13
**11th (2)** 1:7 27:14
**13 (1)** 27:13
**16 (6)** 5:23,23,24,25 7:1,11
**17 (2)** 7:1,12
**18 (4)** 11:7,14,15 25:11

**2**

**2 (10)** 10:19,20 11:3,16 22:14,15 25:2,22 26:7
27:2
**2008 (1)** 1:7 27:13 28:14
**2423(a) (1)** 11:15

**3**

**3 (1)** 10:22
**33401 (1)** 1:19

**4**

**4 (2)** 1:7 28:4
**417 (1)** 1:19

**5**

**5 (1)** 3:24
**561)514-3768 (1)** 1:18

**6**

**6 (1)** 3:25

**7**

**7 (2)** 19:15 20:4
**701 (1)** 1:19

**8**

**8 (1)** 19:1

---
**9**
---

**9 (7)** 10:4 21:20 22:3,13 25:17,21 26:6
**9th (1)** 28:14